Gloria BENEFIELD, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 41A01–1006–PC–310.

Court of Appeals of Indiana.

April 14, 2011.

___

**3.** Sandefur does not challenge his conviction of invasion of privacy.

Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.

## OPINION

CRONE, Judge.

### Case Summary and Issues

Gloria Benefield presented a document at a job interview showing that she was certified as a Qualified Medication Aide ("QMA"). It was later discovered that she was not QMA certified. Benefield was charged with and convicted of class C felony forgery and with being an habitual offender. She appealed, arguing, inter alia, that jury instruction 6 improperly defined "defraud" and created fundamental error. Another panel of this court concluded that although jury instruction 6 improperly defined "defraud," it did not rise to the level of fundamental error.

Benefield petitioned for post-conviction relief, which the post-conviction court denied. She appeals, arguing that the post-conviction court erred in finding that her trial counsel did not provide ineffective assistance by not objecting to testimony regarding her knowledge as to whether she was QMA certified or to jury instruction 6. We conclude that trial counsel's decision not to object to the testimony was part of an objectively reasonable trial strategy and therefore does not constitute ineffective assistance. In addition, we conclude that the decision on direct appeal

that jury instruction 6 did not result in fundamental error does not preclude our consideration as to whether the failure to object to jury instruction 6 created prejudice sufficient to that required for a finding of ineffective assistance of trial counsel. However, we conclude that Benefield fails to carry her burden to establish prejudice. According, we affirm the denial of her petition for post-conviction relief.

### Facts and Procedural History

The relevant facts were set forth in our opinion on direct appeal as follows:

> On March 23, 2005, Benefield applied for a health-care provider position with Regency Place in Greenwood and interviewed with Sabra Stark. Specifically, Benefield applied for a position as a Qualified Medication Aide ("QMA"), for which one needs certification from the Indiana Department of Health. To that end, Benefield produced a document that appeared to be an "Aide Registry [Letter]" issued by the Department of Health [on January 26, 2005]. [State's Ex. 3.] Although the document indicated that Benefield was certified as a QMA, Stark noticed that both the QMA certification number and QMA expiration date listed on the document appeared to be in a typeface inconsistent with the rest of the document.
>
> After the interview, Stark called an automated telephone service to verify Benefield's certifications, only to learn that Benefield was not certified as a QMA. In fact, neither the QMA certification number nor the expiration date listed on the "Aide Registry [Letter]" were valid. Moreover, the Department of Health does not issue corrected "Aide Registry" letters with the corrections in a different typeface, instead preparing

new documents when information has changed.

> On September 2, 2005, the State charged Benefield with Class C felony forgery and with being an habitual offender. Before Benefield's jury trial on August 8, 2007, both parties stipulated to the admissibility of several exhibits, including Aide Registry letters from the Department of Health dated May 13, 2005, and August 1, 2007, which were tentatively identified as State's Exhibits 4 and 5 respectively. At trial, Department of Health Program Director of Administration Darlene Jones testified regarding the Aide Registry letters without objection, although they were not, in fact, actually admitted into evidence. Jones's testimony regarding the May 13, 2005, Aide Registry letter was generally comparing it to the Aide Registry letter produced by Benefield to point out differences in typeface, and her testimony regarding the August 1, 2007 letter was generally to establish that it was an example of an original Aide Registry letter.

*Benefield v. State*, 904 N.E.2d 239, 243 (Ind.Ct.App.2009), *trans. denied.*

Jones also testified regarding a document that was referred to as State's Exhibit 7, but which was not admitted into evidence.[1] Jones testified that State's Exhibit 7 was a document from Professional Resources, the company with which the Department of Health contracts to administer the test required to obtain QMA certification. Jones testified that the document indicated that Benefield had taken the test twice and failed. She further testified that page two of Exhibit 7 had a place for the test-taker to sign in order to

---

1. Although the parties stipulated to the admission of other exhibits, Exhibit 7 was not among them. Trial Tr. at 13–17.

acknowledge that the test-taker had *not* passed the test. According to Jones, Benefield had signed the document, which meant that she knew that she had not passed the test. Trial Tr. at 85.

After the presentation of evidence, the trial court instructed the jury, inter alia, that "*'Defraud' means to make a misrepresentation of an existing material fact, knowing it to be false, or making it recklessly without regard to whether it is true or false."* *Benefield,* 904 N.E.2d at 244 (emphasis added) (citation and quotation marks omitted). Benefield objected to this instruction because it was based on Black's Law Dictionary, but the objection was overruled.

The jury found Benefield guilty as charged, the parties stipulated that Benefield had the required prior unrelated felonies necessary to support an habitual offender enhancement, and the trial court sentenced Benefield to an aggregate sentence of fourteen years.

Benefield appealed her conviction and sentence arguing, inter alia, that the trial court (1) erred in admitting testimony regarding Exhibits 4 and 5 because they were not actually entered into evidence and (2) committed fundamental error in giving final jury instruction 6, which provided the meaning of "defraud." We concluded that because Benefield had failed to object to the testimony regarding Exhibits 4 and 5, she had waived her argument that the trial court erred in admitting that testimony. *Id.* We further concluded that final jury instruction 6 did not provide a proper definition of "defraud," but the error was not fundamental. *Id.* at 247. Ac-

cordingly, we affirmed Benefield's conviction and sentence.

On November 18, 2009, Benefield filed her verified petition for post-conviction relief, alleging that her trial counsel provided ineffective assistance on a number of grounds, including: (1) for failing to object to hearsay regarding her knowledge that she did not have QMA certification; and (2) for failing to object to final jury instruction 6 on the ground that it contained a mens rea standard for defraud that improperly included recklessness.[2] PC App. at 14–20. On May 24, 2010, the post-conviction court denied Benefield's petition. Benefield appeals. Additional facts will be provided as necessary.

## Discussion and Decision

### *Standard of Review*

■■■ Initially, we note that the State has failed to submit an appellee's brief. "When an appellee fails to submit a brief, we need not undertake the burden of developing an argument for the appellee." *State v. Isaacs,* 794 N.E.2d 1120, 1122 (Ind.Ct.App.2003). As such, Benefield may prevail by establishing a prima facie case of error. *Sims v. State,* 771 N.E.2d 734, 736 n. 1 (Ind.Ct.App.2002), *trans. denied.* Prima facie error is error "at first sight, on first appearance, or on the face of it." *State v. Augustine,* 851 N.E.2d 1022, 1025 (Ind.Ct.App.2006) (citation and quotation marks omitted).

■■■ Benefield appeals the denial of her petition for her post-conviction relief We observe that the purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at

---

**2.** Benefield also argued that her trial counsel was ineffective for stipulating to the admission of State's Exhibit 3, a copy of the Aide Registry Letter Benefield gave to Stark at the job interview; for stipulating to the introduction of exhibits and waiving her right to con-

front the witnesses against her without her intelligent, knowing, and voluntary consent; and for failing to obtain a computer expert to examine the Indiana State Department of Health computer system. However, these are not in issue in this appeal.

the time of the original trial and appeal. *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006). A post-conviction petition is not a substitute for an appeal, nor does it afford the petitioner a "super appeal." *Id.*

In post-conviction proceedings, the petitioner bears the burden of proof by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind.2008). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind.2004). "To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Kubsch v. State*, 934 N.E.2d 1138, 1144 (Ind.2010).

In addition, we observe that the post-conviction court made findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6). "A postconviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind.2000) (citation and quotation marks omitted). We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. *Wilson v. State*, 799 N.E.2d 51, 53 (Ind.Ct.App.2003). "The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses." *Woods v. State*, 701 N.E.2d 1208, 1210 (Ind.1998).

Benefield contends that she received ineffective assistance of trial counsel in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article 1, Sections Twelve and Thirteen of the Indiana Constitution.

When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. Second, the defendant must show that the deficient performance resulted in prejudice. To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct.App.2009) (citations omitted), *trans. denied.* If a claim of ineffective assistance can be disposed of by analyzing the prejudice prong alone, we will do so. *Wentz v. State*, 766 N.E.2d 351, 360 (Ind.2002).

There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Stevens v. State*, 770 N.E.2d 739, 746–47 (Ind.2002) (citations omitted). Specifically, Benefield argues that her trial counsel

provided ineffective assistance by failing to object (1) to Jones's testimony regarding Exhibit 7 on the basis that it was inadmissible hearsay and (2) to final jury instruction 6 on the ground that it provided an incorrect definition of "defraud."

### I. Failure to Object to Testimony

Benefield was charged with and convicted of class C felony forgery. To sustain her conviction, the State was required to prove beyond a reasonable doubt that Benefield, "with intent to defraud, ma[de], utter[ed], or possess[ed] a written instrument in such a manner that it purports to have been made with different provisions." Ind.Code § 35–43–5–2(b)(3). The document that the State sought to prove that Benefield forged was the Aide Registry Letter purportedly issued by the Department of Health, which she presented to Stark at the job interview. State's Exhibit 3 was a copy of that letter. The Aide Registry Letter assigned a QMA certification number to Benefield and provided an expiration date for the certification. The State's theory was that Benefield had physically altered the Aide Registry Letter to put the QMA certification number and expiration date on it. Defense counsel's strategy was to emphasize the evidence that supported the theory that Benefield had received the Aide Registry Letter exactly as it appeared such that the Department of Health was responsible for any incorrect information it contained, and, having received the letter, she chose to believe that she had been awarded QMA certification.

To show that the Department of Health could have issued a document containing incorrect information, Benefield called Christopher Cotterill, the director of the Indiana state web site, to testify. Cotterill testified that the State's computers were constantly under attack from hackers. Trial Tr. at 108. He further testified that his office sent a letter to Benefield, informing her that "information about [her] status as a certified nurse aid, qualified medication, or health, or, home, health aid was recently accessed illegally from a data base used by the State of Indiana's web site." *Id.* at 101. Similar letters were sent to many other people as well. *Id.* at 100. In addition, as part of defense strategy, defense counsel emphasized Stark's testimony that she believed that the Aide Registry Letter was an original State document that "did not look altered." *Id.* at 63. With this backdrop in mind, we turn to the testimony at issue here.

At trial, the prosecutor elicited the following testimony from Darlene Jones, Indiana Department of Health Program Director of Administration, regarding the document identified as State's Exhibit 7:

Q I want to show you what is listed as State's seven, a document in three pages, can you tell me what is that document, ma'am?

A This came from Professional Resources and they are the ones that do the testing of the QMA and Gloria Benefield had taken the test 1–13–'04 and did not pass. She also took it 2–5–'04 and did not pass, so she tried twice and did not pass.

Q And because she did not pass that test is she allowed to be a QMA?

A No.

Q Okay. And there is also, I want to show you on page, page two of this document, a place for the candidate's signature?

A Yes she does sign off on it.

Q Acknowledging what?

A That she didn't pass.

Q Okay, so she knew that she didn't pass?

A Yes.

*Id.* at 84–85. Benefield's attorney did not object.

■ Benefield argues that her counsel was ineffective for failing to object to Jones's testimony as inadmissible hearsay evidence.[3] "[T]o prevail on a claim of ineffective assistance due to the failure to object, the defendant must show an objection would have been sustained if made." *Overstreet v. State,* 877 N.E.2d 144, 155 (Ind.2007). Relying on *Pemberton v. State,* 560 N.E.2d 524, 527 (Ind.1990), Benefield contends that an objection would have been sustained and that there was no conceivable rational basis upon which to predicate a decision not to object, and therefore counsel rendered ineffective assistance. However, even if Jones's testimony was itself inadmissible, that fact alone does not prove ineffective assistance, especially where counsel's failure to object was part of trial strategy.

■ We observe that the choice of defense theory is a matter of trial strategy. *Overstreet,* 877 N.E.2d at 154. Counsel is given "significant deference in choosing a strategy which, at the time and under the circumstances, he or she deems best." *Potter v. State,* 684 N.E.2d 1127, 1133 (Ind.1997). "A reviewing court will not second-guess the propriety of trial counsel's tactics." *Davidson v. State,* 763 N.E.2d 441, 446 (Ind.2002) (citation and quotation marks omitted). "[T]rial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective

standard of reasonableness." *Autrey v. State,* 700 N.E.2d 1140, 1141 (Ind.1998). "This is so even when such choices may be subject to criticism or the choice ultimately prove[s] detrimental to the defendant." *Id.* (citation and quotation marks omitted).

■ At the post-conviction hearing, Benefield's counsel testified that he did not object to Jones's testimony because he did not want to emphasize the information in Exhibit 7. PC Tr. at 16. Counsel explained that if the State brought in someone from Professional Resources to testify as to Exhibit 7, then that would bring unwanted attention to the fact that Benefield was fully aware that she had failed the test twice. *Id.* at 15.[4] Given that the State was attempting to prove that Benefield had actually altered the Aide Registry Letter, defense counsel's strategy to minimize Benefield's knowledge that she had not passed the test and highlight the possibility that the Department of Health had created the Aide Registry Letter with incorrect information was reasonable. Thus, counsel had a strategic reason for not objecting to Jones's testimony regarding Exhibit 7 because it would have called even more attention to evidence that was damaging to her case. "A decision to not object to evidence when the objection may be more damaging than the evidence is within the wide range of professionally competent assistance." *Stevens,* 770 N.E.2d at 752.

We conclude that Benefield's trial counsel's decision not to object appears to have

---

3. Hearsay is an out of court statement offered in evidence to prove the truth of the matter asserted. Ind. Evid. Rule 801(c). "Hearsay is not admissible except as provided by law or by these rules." Ind. Evid. Rule 802.

4. Benefield asserts that no witness from Professional Resources was included in the State's list of witnesses and exhibits. Appellant's Br. at 14. However, not all the wit-

nesses on the State's list and the State's amended witness list were called, and Benefield does not identify the uncalled witnesses. Trial App. at 39, 117. We further note that if defense counsel had objected to Jones's testimony, the State could have asked for a continuance to bring a Professional Resources witness to testify regarding Exhibit 7.

been part of an objectively reasonable trial strategy, and therefore does not fall outside the range of reasonable professional judgment. *See id.* (agreeing with post-conviction court that "[d]efense counsel's decision not to object to the admission of the [victim impact evidence] was a reasonable decision not to draw the jury's attention to this testimony."). As such, Benefield has failed to carry her burden to show that "the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Kubsch,* 934 N.E.2d at 1144.

## II. Jury Instruction Defining "Defraud"

Benefield also argues that trial counsel was ineffective for failing to object to final jury instruction 6 on the ground that it improperly defined "defraud." Jury instruction 6 provided that " 'Defraud' means to make a misrepresentation of an existing material fact, knowing it to be false, or making it recklessly without regard to whether it is true or false." Trial App. at 74. On appeal, Benefield argued that the trial court committed fundamental error in giving this instruction. We rejected her argument, reasoning as follows:

> Final Instruction 6 impermissibly suggested to the jury that it could convict Benefield upon finding merely a "reckless" state of mind, when the forgery statute required that the making uttering or possession of the written instrument in question be done with the "intent to defraud." Ind.Code § 35–43–5–2(b). A merely reckless state of mind is simply not compatible with a specific intent to defraud. To the extent that Final Instruction 6 suggests that a person recklessly making a representation may have the intent to defraud, we conclude that it is not a proper statement of the law.

> . . . .

> [T]he instruction's misstatement of the *mens rea,* [ ]does not rise to the level of fundamental error. In some cases, a jury instruction that misstates the *mens rea* amounts to fundamental error. *See, e.g., Greer v. State,* 643 N.E.2d 324, 327 (Ind.1994) (concluding that instruction that a defendant could "knowingly" commit attempted murder was fundamental error). Such an error can be cured, however, where the jury was otherwise sufficiently informed of the proper *mens rea. Id.* at 326–27.

> When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument, and other instructions[.] There is no resulting due process violation where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law. *Boesch v. State,* 778 N.E.2d 1276, 1279 (Ind.2002) (citations omitted).

> Here, preliminary jury instructions included the charging information, which read, in part, that "[o]n or about March 23, 2005, in Johnson County, Indiana, Gloria Benefield, *with intent to defraud,* did make or utter a written instrument, to-wit: an Indiana Aide Registry Letter, in such a manner that it purported to have been made with different provisions." Appellant's App. p. 52 (emphasis added). Final Instruction 4 first tracked the language of Indiana Code section 35–43–5–2(b) and then specifically informed the jury of the elements that it must find beyond a reasonable doubt, thereby informing the jury twice more that Benefield must have had the "intent to defraud" in order to be guilty of

forgery. Appellant's App. p. 72. Additionally, the State, in its opening statement, recited the statutory definition of forgery, including the required "intent to defraud[.]" Tr. p. 30. In summary, even though the jury was misinformed once regarding the proper *mens rea* for forgery, it was properly informed four times, including three times by the trial court. This repetition of the proper *mens rea*, especially because it came mostly from the trial court, very likely would have cured the error by itself. *See Perez v. State*, 872 N.E.2d 208, 212 (Ind.Ct.App.2007) (concluding that trial court's two instructions stating proper *mens rea* for attempted murder cured instruction that defendant could "knowingly" commit attempted murder), *trans. denied.* There is more, however.

The jury was also instructed that it was "to consider all the instructions as a whole and [ ] to regard each with the others given to you" and not to "single out any certain sentence, or any individual point or instruction and ignore the others." Appellant's App. p. 49. Finally, we would note that while the jury was instructed on the legal meaning of the term "intentionally," it was not given the legal meaning of "recklessly." In our view, the lack of any elaboration on the concept of recklessness made it even less likely that the jury was focused on it. We conclude that, while Final Instruction 6 misstated the law, the repeated statements of the proper *mens rea*, the trial court's instruction not to consider any one instruction in isolation, and the lack of any other mention of "recklessness" prevented the occurrence of fundamental error in this case.

*Benefield*, 904 N.E.2d at 245–47.

Before we address the substance of Benefield's argument that trial counsel was ineffective in failing to object to jury instruction 6, we must first determine whether the conclusion on direct appeal that jury instruction 6 did not constitute fundamental error is effectively a decision that trial counsel did not render ineffective assistance. Benefield asserts, "Although the standards of prejudice for fundamental error and ineffective assistance of counsel are similar, in Benefield's case, the fact that the trial [c]ourt did not cause fundamental error in giving the Instruction does not foreclose a finding that counsel created prejudicial error in failing to object to it." Appellant's Br. at 16.

 To determine the effect of the decision in Benefield's direct appeal on her post-conviction argument, we begin by comparing the standard for fundamental error with that for ineffective assistance prejudice. The fundamental error exception permits an appellate court to review a "claim that has been waived by a defendant's failure to raise a contemporaneous objection." *Brown v. State*, 929 N.E.2d 204, 207 (Ind.2010). "Fundamental error is defined as an error so prejudicial to the rights of a defendant that a fair trial is rendered impossible." *Perez v. State*, 872 N.E.2d 208, 210 (Ind.Ct.App. 2007), *trans. denied.* The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind.2006).

As to ineffective assistance of counsel, we rely on the seminal case of *Strickland,* in which the United States Supreme Court held that to establish prejudice the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient

to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. 2052. The U.S. Supreme Court also explained that establishing prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. 2052.

Both standards make reference to a defendant's right to a "fair trial." At first reading, it is not obvious whether the standards differ substantively or merely state differently the same question. Indeed, other panels of this Court have based their determinations as to whether counsel rendered ineffective assistance on the premise that the two standards are the same. *See Taylor v. State,* 882 N.E.2d 777, 782 (Ind. Ct.App.2008) (" 'If an instruction is not fundamentally erroneous, then counsel is not ineffective for failing to object at trial, or failing to raise the issue on appeal.' ") (quoting *Sanders v. State,* 764 N.E.2d 705, 715 (Ind.Ct.App.2002), *trans. denied*); *Dickenson v. State,* 835 N.E.2d 542, 553–54 (Ind.Ct.App.2005) ("Our court has held that a defendant is not prejudiced by counsel's failure to object to [the] charging information or an instruction if the alleged error with the information is not fundamental."), *trans. denied; Smith v. State,* 792 N.E.2d 940, 944 (Ind.Ct.App.2003) ("In analyzing ineffective assistance claims, counsel's performance does not prejudice a defendant if the underlying error to which counsel failed to object is not fundamental."), *trans. denied; Manuel v. State,* 793 N.E.2d 1215, 1220 (Ind.Ct.App.2003) ("Given our determination that the admission of D.M.'s testimony regarding the prior uncharged molestations was not fundamental error, we cannot conclude that there is a reasonable probability that the result of Manuel's trial would have been different."),

*trans. denied; Wilcoxen v. State,* 705 N.E.2d 198, 204 (Ind.Ct.App.1999) ("If an instruction is not fundamentally erroneous, then counsel is not ineffective for failing to object at trial, or failing to raise the issue on appeal."), *trans. denied; Coleman v. State,* 708 N.E.2d 25, 28 (Ind.Ct.App.1999) ("Because we have held that Final Instruction No. 2 did not constitute fundamental error, Coleman cannot show that he was prejudiced by his counsel's performance at trial or on appeal; therefore, we need not determine whether their performance was deficient."), *trans. denied; Wilson v. State,* 611 N.E.2d 160, 162 (Ind.Ct.App.1993) ("Thus, under both the fundamental error doctrine and an ineffective assistance of counsel claim, the defendant will not be entitled to a new trial unless counsel failed to object to an error at trial that resulted in prejudice to the defendant.").

█ Most of these cases can ultimately be traced back to *Moore v. State,* 649 N.E.2d 686 (Ind.Ct.App.1995) *abrogation on other grounds recognized by Craig v. State,* 804 N.E.2d 170, 172–73 (Ind.Ct.App. 2004).[5] *In Moore,* the court stated, "Because we have determined that the trial court's instruction did not rise to the level of fundamental error, Moore's [appellate] counsel cannot be deemed ineffective for failing to raise the issue on appeal." *Id.* at 690. Significantly, *Moore* involved a claim of ineffective assistance of *appellate* counsel, not trial counsel. As with trial counsel, to establish that appellate counsel rendered ineffective assistance, a petitioner must show appellate counsel was deficient in performance and that the deficiency resulted in prejudice. *Ritchie v. State,* 875 N.E.2d 706, 723 (Ind.2007). However, appellate and trial counsel have different tasks, which result in different kinds of deficient performance and prejudice.

**5.** *Taylor, Dickenson, Smith, Sanders,* and *Wilcoxen* either directly cite *Moore* or can be traced back to it. *Wilson* and *Manuel* provide no citation, and *Coleman* cites *Wilson.*

Thus, when the alleged error is that appellate counsel failed to raise issues, prejudice is based on "whether the issues appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial." *Id.* at 724. Accordingly, there is no prejudice created by appellate counsel's failure to raise an unpreserved issue that does not result in fundamental error because the issue would *not* have been clearly more likely to result in reversal or an order for a new trial. Put another way, if an unpreserved error is found not to be fundamental, then appellate counsel cannot be ineffective for failing to raise it. Because the holding in *Moore* applied to appellate counsel, we conclude that it cannot be mechanically applied to claims of ineffective assistance of trial counsel.

 When a claim of ineffective assistance involves trial counsel, we think that there is a subtle distinction between the fundamental error and ineffective assistance prejudice standards. As our supreme court has explained,

> While we frame the standard for ineffective assistance of counsel and fundamental error in somewhat different terms—appropriately so, since the first is a standard of Federal Constitutional law and the second of state criminal procedure—they will invariably operate to produce the same result where the procedural posture of the claim is caused by counsel's failure to object at trial.

*McCorker v. State,* 797 N.E.2d 257, 262–63 (Ind.2003) (footnote omitted). Thus, although the two standards may frequently lead to the same result, the analyses are different. Moreover, consider that "[e]rrors by counsel that are not individually sufficient to prove ineffective representation may add up to ineffective assistance when viewed cumulatively." *Pennycuff v. State,* 745 N.E.2d 804, 816–17 (Ind.2001).

As such, there could be an unpreserved error raised on direct appeal that was found not to have caused fundamental error, but nevertheless when later raised in a post-conviction proceeding as part of an ineffective assistance claim the cumulative effect of that error when combined with other errors may amount to ineffective assistance.

 In addition, due to the different procedural postures of a direct appeal and a postconviction proceeding, different evidence may be available. A recent supreme court case, *Jewell v. State,* 887 N.E.2d 939 (Ind.2008), supports our view that the absence of fundamental error on direct appeal does not foreclose the existence of ineffective assistance of trial counsel in post-conviction proceedings. In that case, Jewell brought a direct appeal challenging three convictions by alleging six claims of fundamental error. Another panel of this court, sua sponte, recharacterized three of the issues as ineffective assistance of counsel claims and denied relief but reversed two of the three convictions on other grounds. *Jewell v. State,* 877 N.E.2d 864, 873 (Ind.Ct.App.2007), *trans. granted* (2008). Jewell petitioned the Indiana supreme court for transfer, asserting that he had not presented claims of ineffective assistance on direct appeal and still had the opportunity to present an ineffective assistance claim in a post-conviction proceeding. The supreme court granted transfer and addressed the merits of Jewell's claims based on the fundamental error analysis, explaining as follows:

> A criminal defendant claiming ineffective assistance of trial counsel is at liberty to elect whether to raise this claim on direct appeal or in postconviction proceedings. But if raised on direct appeal, the appellate resolution of the issue acts as *res judicata* and precludes its reliti-

gation in subsequent post-conviction relief proceedings.

In contrast to a direct appeal, which addresses claims of error established in the record of proceedings through trial and judgment, a postconviction relief proceeding may receive new evidence not previously presented at trial. Ind. Post–Conviction Rules 1(1)(a)(4) and 1(5). To establish a violation of the Sixth Amendment right to effective assistance of counsel requires a defendant to prove two components: (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) the deficient performance prejudiced the defendant to the extent that, but for counsel's errors, the result of the proceeding would have been different. To support such a claim of ineffective assistance of counsel, it is often necessary to develop facts beyond those contained in the trial record. Unless foreclosed by raising the issue on direct appeal, a defendant should be permitted to present the issue of ineffective assistance of counsel utilizing the broader evidentiary opportunities afforded in postconviction proceedings.

We therefore address only the defendant's assertions that his trial counsel's representation constituted fundamental error, but not as claims of ineffective assistance of counsel under the Sixth Amendment.

*Jewell,* 887 N.E.2d at 941–42.

The *Jewell* court concluded that none of the claims satisfied "the narrow criteria warranting their consideration under the fundamental error exception to procedural default," but stated, "The defendant may thus present a future post-conviction claim alleging ineffectiveness of trial counsel." *Id.* at 942.

■■■ *Jewell* shows that fundamental error and prejudice for ineffective assistance of trial counsel are different questions and that a finding on direct appeal that no fundamental error occurred does not preclude a post-conviction claim of ineffective assistance of trial counsel. Further, because the standard for ineffective assistance prejudice is based on a reasonable probability of a different result and fundamental error occurs only when the error is so prejudicial that a fair trial is rendered impossible, we think the standard required to establish fundamental error presents a higher bar.

In *Rouster v. State,* 705 N.E.2d 999, 1008 n. 8 (Ind.1999), the court stated that it would consider Rouster's claims of ineffective assistance of trial counsel "with the understanding that if Rouster is unable to satisfy that test's prejudice prong, he will also be unable to satisfy the post-conviction fundamental error standard." The *Rouster* court's comparison implies that the test to establish prejudice for ineffective assistance of trial counsel is not as high as that for fundamental error. *See also Culver v. State,* 727 N.E.2d 1062, 1070 (Ind.2000) ("Establishing a claim of fundamental error requires a showing of at least as much prejudice to the defendant as a claim of ineffective assistance of [trial] counsel. As such, a finding that Defendant was not denied the effective assistance of [trial] counsel also establishes that the alleged error was not so prejudicial as to constitute fundamental error.") (citing *Rouster,* 705 N.E.2d at 1008 n. 8); *Walker v. State,* 813 N.E.2d 339, 341–42 (Ind.Ct. App.2004) ("Accordingly, our conclusion that Walker received effective assistance of [trial] counsel necessarily precludes Walker's right to relief under the theory of fundamental error."), *trans. denied.* Moreover, at the time the *Rouster* court made the comparison, the standard for ineffective assistance prejudice was understood

to require an additional inquiry into fundamental fairness, which has since been pronounced unnecessary.[6]

 Accordingly, we hold that fundamental error and prejudice for ineffective assistance of trial counsel present two substantively different questions. Further, we conclude that when a claim of ineffective assistance of trial counsel is based on a failure to object, and that error was advanced as fundamental error on direct appeal, a finding that the error did not rise to fundamental error does not automatically rule out the possibility that the error resulted in prejudice sufficient to establish ineffective assistance. In addition, we conclude that the bar establishing fundamental error is higher than that for prejudice of ineffective assistance of trial counsel. Therefore, where an appellant has failed to prove ineffective assistance of trial counsel, our holding would exclude a finding of fundamental error.

 We now address the merits of Benefield's claim that trial counsel was ineffective for failing to object to final instruction 6 on the ground that it improperly defined "defraud." We concluded on direct appeal that the instruction did not properly define "defraud," and having so decided, we are precluded from revisiting that sub-issue. *See Collins v. State*, 873 N.E.2d 149, 158 (Ind.Ct.App.2007) ("Issue preclusion, or collateral estoppel, bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in a subsequent lawsuit.") (citation omitted), *trans. denied.* Assuming for purposes of this appeal that counsel's failure to object to the instruction and tender a proper instruction constituted deficient performance, Benefield fails to carry her burden to show that but for counsel's failure to object, there is a reasonable probability that she would have been found not guilty. Benefield contends that the *cumulative effect* of trial counsel's failure to object to Jones's testimony regarding exhibit 7 and to jury instruction 6 created prejudice such that the guilty verdict is rendered unreliable and a new trial is required. However, having determined that the failure to object to Jones's testimony was not ineffective assistance, we consider only whether counsel's failure to object to jury instruction 6 resulted in prejudice to Benefield. Here, the jury received the proper mens rea for forgery from the trial court three times, was directed to consider all the instructions as a whole, and was instructed on the legal meaning of intentionally but not recklessly. Given the totality of the instructions provided to the jury, we cannot say that there is a reasonable probability that but for counsel's failure to object to jury instruction 6, the result of the proceeding would have been

---

6. In *Lockhart v. Fretwell*, 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the U.S. Supreme Court stated that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." In its standard of review, *Rouster* cited this language from *Lockhart.* 705 N.E.2d at 1003. Some courts, including *Rouster*, read *Lockhart* as requiring a separate inquiry into fundamental fairness in addition to assessing whether there was a reasonable probability of a different result. *Id.; see also Williams v. Warden of the Meck-* lenburg Correctional Ctr., 254 Va. 16, 487 S.E.2d 194, 198 (1997). However, in *Williams v. Taylor*, 529 U.S. 362, 391–99, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the U.S. Supreme Court stated that it was error to read *Lockhart* as modifying or supplanting the rule set down in *Strickland* and concluded that the application of *Lockhart*'s fundamental unfairness or unreliability analysis was contrary to law. In *Coleman v. State*, 741 N.E.2d 697, 698–99 (Ind.2000), the Indiana supreme court recognized *Williams*'s clarification of the ineffective assistance prejudice analysis.

different. We conclude that Benefield has failed to carry her burden to show that the post-conviction court clearly erred in finding that her trial counsel's failure to object to jury instruction 6 constituted ineffective assistance of counsel.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.