## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 28 2018, 6:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Stephen T. Owens<br>Public Defender of Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana |
| John Pinnow<br>Deputy Public Defender<br>Indianapolis, Indiana | James B. Martin<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David Barbee,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 28, 2018<br><br>Court of Appeals Case No.<br>49A04-1707-PC-1555<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Sheila A. Carlisle, Judge<br><br>The Honorable Stanley E. Kroh, Magistrate<br><br>Trial Court Cause No.<br>49G03-0706-PC-113806 |

**Robb, Judge.**

# Case Summary and Issues

Following a jury trial, David Barbee was found guilty of murder, a felony, and carrying a handgun without a license, a Class A misdemeanor. The trial court sentenced Barbee to an aggregate sentence of sixty-one years executed in the Indiana Department of Correction. On direct appeal, we affirmed Barbee's convictions. *Barbee v. State*, No. 49A04-0907-CR-370 (Ind. Ct. App. Sept. 18, 2013), *trans. denied.* Thereafter, Barbee filed a petition for post-conviction relief wherein he alleged ineffective assistance of trial and appellate counsel, which the post-conviction court denied. Barbee now appeals, raising two issues for our review: (1) whether the post-conviction court erred in concluding Barbee's trial counsel was not ineffective, and (2) whether the post-conviction court erred in concluding Barbee's appellate counsel was not ineffective. Concluding Barbee did not receive ineffective assistance of trial or appellate counsel, we affirm.

# Facts and Procedural History

We summarized the facts and procedural history of this case in Barbee's direct appeal:

> On June 15, 2007, David Barbee shot and killed David Kimbrough while Kimbrough sat on Letroy Burks' porch. On the porch at the time of the shooting were Burks, Kimbrough's girlfriend Brandi Arnwine, Kimbrough's sister and Burks's girlfriend Lakeisha Kimbrough, Burks' cousin Brandon Tyler, and Anniya Willis and her young daughter.

Barbee lived nearby, and he had driven past Burks' porch three times while Kimbrough and his companions were present. Sometime later, Barbee approached Burks' porch, used vulgarity, and stated "what did I tell you about coming out south," and "you think I'm playing?" Barbee's comments appeared to be directed at Tyler. Barbee then pulled out a gun and fired a shot, which killed Kimbrough.

Anthony Hampton, who was walking next to Burks' house at the time of the shooting, testified he saw a man on the porch raise the gun and point it at Barbee, who was standing in the street. The gun appeared to misfire, and then Barbee raised and fired his gun. Barbee walked up the porch ramp and pointed the gun at Arnwine and Burks. Burks told Barbee "Man, you tripping, man. You shot my dude for nothing." Barbee looked at Kimbrough lying in the grass, looked back at Burks, and then walked away.

Barbee was charged with and convicted of murder and Class C felony carrying a handgun without a license. Barbee filed a Motion to Correct Error and Set Aside Judgment, which was denied. Barbee filed his second Motion to Correct Error, arguing *inter alia* he was entitled to a new trial because Arnwine had recanted her earlier testimony that she did not see Tyler with a gun. That motion was also denied.

*Id.* at *1. The trial court sentenced Barbee to an aggregate term of sixty-one years and Barbee appealed, raising three issues for our review: (1) whether the trial court should have granted Barbee's second Motion to Correct Error based on newly discovered evidence from one of the State's witnesses; (2) whether comments in closing argument were fundamental error when the prosecutor implied that a witness testified as she did because she was afraid of Barbee; and (3) whether the trial court committed fundamental error by instructing the jury

on voluntary manslaughter. We affirmed Barbee's convictions. In 2014, Barbee filed a petition for post-conviction relief, alleging ineffective assistance of trial and appellate counsel, which the post-conviction court denied on July 5, 2017. Barbee now appeals the denial of post-conviction relief.

# Discussion and Decision

## I. Standard of Review

[3] Post-conviction proceedings are civil in nature and the petitioner must therefore establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). These proceedings, however, are not an opportunity for a super-appeal. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). "The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses." *Woods v. State*, 701 N.E.2d 1208, 1210 (Ind. 1998). Thus, we may not reweigh the evidence or reassess the credibility of the witnesses and we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468-69 (Ind. 2006). The petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Strowmatt v. State*, 779 N.E.2d 971, 975 (Ind. Ct. App. 2002).

[4] Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941

N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law.[1] *Wilson v. State*, 799 N.E.2d 51, 53 (Ind. Ct. App. 2003).

## II. Ineffective Assistance of Trial and Appellate Counsel

### A. Standard of Review

Barbee claims the post-conviction court erred in concluding his trial and appellate counsel were not ineffective. Specifically, he claims he was denied the effective assistance of trial counsel when counsel failed to object to final jury instruction 23 and failed to call James Williams as a defense witness. Barbee also claims he was denied the effective assistance of appellate counsel when appellate counsel failed to argue that the error in final jury instruction 23 was fundamental error.

The standard for ineffective assistance of both trial and appellate counsel is the same. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). We review claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, the petitioner must show 1) his counsel's performance was deficient, and 2) the lack of reasonable representation prejudiced him. *Id.* at 687. These two prongs are

---

[1] Although we do not defer to the post-conviction court's conclusions of law, we commend the post-conviction court for its thorough and well-reasoned Findings of Fact and Conclusions of Law Denying Post-Conviction Relief, which has aided our review of this case.

separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied, cert. denied*, 135 S.Ct. 2376 (2015). Therefore, "if it is easier to dispose of an ineffectiveness claim on one of the grounds instead of the other, that course should be followed." *Talley v. State*, 736 N.E.2d 766, 769 (Ind. Ct. App. 2000).

[7] The first prong requires that the petitioner show counsel's representation fell below an objective standard of reasonableness and that counsel committed errors so serious that petitioner did not have "counsel" as guaranteed by the Sixth Amendment of the United States Constitution. *Garrett,* 992 N.E.2d at 719. To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

[8] We afford counsel "considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Timberlake*, 753 N.E.2d at 603. We also recognize a strong presumption that counsel rendered adequate legal assistance. *Id.* The defendant must offer "strong and convincing evidence to overcome this presumption." *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied*.

# B. Trial Counsel

Barbee argues the post-conviction court erred in concluding his trial counsel was not ineffective because his trial counsel failed to object to final jury instruction 23 and failed to call a potential witness.

## 1. Instructional Error

First, Barbee alleges that his trial counsel should have objected to final jury instruction 23. Relevant here, the trial court provided the following final jury instructions:

> As to these instructions on the law, read to you by the Court, and which you will be allowed to take to the jury room with you, it is impractical to embody all applicable law in any one instruction. So in considering any one instruction, you should construe it in connection with, and in light of, every other instruction given.

> [Final jury instruction 23] The defendant is charged with Murder. Voluntary Manslaughter and Reckless Homicide are included in Count I, Murder. *If the State proves the defendant guilty of Murder, you need not consider the included crimes.* However, if the State fails to prove the defendant committed Murder, you may consider whether the defendant committed Voluntary Manslaughter or Reckless Homicide, which the Court will define for you.

> You must not find the defendant guilty of more than one crime for each count.

> The crime of Murder is defined by law as follows: A person who knowingly or intentionally kills another human being commits Murder, a felony. [End of final jury instruction 23]

Included in the charge in this case is the crime of Voluntary Manslaughter, which is defined by the statute as follows: A person who knowingly or intentionally kills another human being while acting under sudden heat commits Voluntary Manslaughter, a Class B felony. The offense is a Class A felony if it's committed by means of a deadly weapon.

Sudden heat is a mitigating factor that reduces what otherwise would be Murder to Voluntary Manslaughter. The State has the burden of proving beyond a reasonable doubt that the defendant was not acting under sudden heat.

Before you may convict the defendant, the State must have proved each of the following beyond a reasonable doubt: (1) the defendant, David Barbee, (2) knowingly, (3) killed, (4) another human being, namely: David Kimbrough, by shooting a deadly weapon, that is: A handgun, at and against the person of David Kimbrough, thereby inflicting mortal injuries upon David Kimbrough, causing David Kimbrough to die, (5) and the defendant was not acting under sudden heat, (6) and the defendant killed by means of a deadly weapon.

If the State failed to prove each of the elements 1 through 4 beyond a reasonable doubt, you must find the defendant not guilty of Murder as charged in Count I.

If the State did prove each of the elements 1 through 4 and element 6 beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt element 5, you may find the defendant guilty of Voluntary Manslaughter, a Class A felony, a lesser included offense of Count I.

If the State did prove each of the elements 1 through 5 beyond a reasonable doubt, you may find the defendant guilty of Murder, a felony, as charged in Count I.

Included in the charge in this case is the crime of Reckless Homicide, which is defined by the statute as follows:  A person who recklessly kills another human being commits Reckless Homicide, a Class C felony.

Before you may convict the defendant, the State must have proved each of the following elements: (1) the defendant, David Barbee, (2) recklessly, (3) killed, (4) another human being, namely: David Kimbrough, by shooting a deadly weapon, that is: A handgun, at and against the person of David Kimbrough, thereby inflicting mortal injuries upon David Kimbrough, causing David Kimbrough to die.

If the State failed to prove each of the elements beyond a reasonable doubt, you must find the defendant not guilty of Reckless Homicide as included in Count I.

If the State did prove each of the elements beyond a reasonable doubt, you may find the defendant guilty of Reckless Homicide, a Class C felony, as included in Count I.

Exhibits at 29-33 (emphasis added).

[11]   Barbee alleges there was a sequencing error regarding the sentence in final jury instruction 23 that provides, "If the State proves the defendant guilty of Murder, you need not consider the included crimes." *Id.* at 30.  Specifically, Barbee contends that the sentence "erroneously precluded the jury from considering voluntary manslaughter if they found Barbee committed a knowing killing even though voluntary manslaughter (Ind. Code 35-42-1-3) and murder (Ind. Code 35-42-1-1(1)) have the same elements—a knowing or intentional killing of another person."  Brief of Petitioner-Appellant at 21.  Barbee further alleges that

although "[t]rial counsel Caudill did not see the error at the time of trial … [h]e now agrees the instruction was erroneous and the failure to object to it was a glaring error." *Id.* This failure to object, Barbee contends, constituted deficient performance.

[12] Assuming for the purposes of this appeal that trial counsel's failure to object to the instruction constituted deficient performance, Barbee fails to carry his burden to show that but for counsel's failure to object, there is a reasonable probability that the outcome of his trial would have been different. *See Benefield v. State,* 945 N.E.2d 791, 805 (Ind. Ct. App. 2011). Our supreme court has previously explained:

> When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument, and other instructions. There is no resulting due process violation where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law.

*Boesch v. State,* 778 N.E.2d 1276, 1279 (Ind. 2002) (citations omitted).

[13] Here, although one sentence in final jury instruction 23 is potentially confusing, we conclude that all the information provided to the jury, considered as a whole, did not mislead the jury as to a correct understanding of the law. First, the trial court expressly informed the jury that "in considering any one instruction, you should construe it in connection with, and in light of, every

other instruction given." Exhibits at 29-30. Second, final jury instruction 24, the instruction that immediately followed the instruction about which Barbee complains, correctly explained the relevant law:

> Included in the charge in this case is the crime of Voluntary Manslaughter, which is defined by the statute as follows: A person who knowingly or intentionally kills another human being while acting under sudden heat commits Voluntary Manslaughter, a Class B felony. The offense is a Class A felony if it's committed by means of a deadly weapon.

> Sudden heat is a mitigating factor that reduces what otherwise would be Murder to Voluntary Manslaughter. *The State has the burden of proving beyond a reasonable doubt that the defendant was not acting under sudden heat.*

*Id.* at 30-31 (emphasis added). And third, in the words of the post-conviction court, trial counsel "correctly and thoroughly explained [the law] to the jury," Appealed Order at 17, in closing arguments:

> I want to kind of go through the elements of murder with you and sort of lay out how you have to evaluate the different charges, because you're going to have murder, voluntary manslaughter, reckless homicide, and then, of course, not guilty at the bottom. Okay?

> So what you're going to have, for Mr. Barbee to be guilty of murder, Mr. Barbee knowingly killed David Kimbrough. That means when he fired that shot, he was aware of a high probability that David Kimbrough was going to die. That's what they've got to prove. Okay?

If they prove all those things to you, you're still not done, because then you have to consider whether or not Mr. Barbee acted in sudden heat, whether or not he was inflamed by anger, and that's why he reacted the way he did. The State has the burden of disproving that beyond a reasonable doubt.

I know it's going to get complex. So you go through those elements of murder, and you see if they're all there. If they're not, well, then you don't have to even consider voluntary manslaughter, because you've got to have all the elements of murder first. Okay?

You go through the elements of murder. If they're all there, then you have to ask yourself did he act in sudden heat, and did the State disprove that beyond a reasonable doubt. So they have to prove to you that he did not act in sudden heat.

If they failed -- if they met the burden on all the elements of murder, but failed on the sudden heat, then it's voluntary manslaughter. Okay?

Now, as you're going through those elements of murder and you decide they didn't meet all of those elements, then you have to consider reckless homicide. That's the next step. Okay? . . .

[Trial] Transcript, Volume II at 487-88. Whether counsel properly stated the law in closing argument can impact whether an instructional error is harmless. *Rosales v. State,* 23 N.E.3d 8, 16 (Ind. 2015).

[14] In light of all of the information provided to the jury, we conclude that Barbee was not denied fundamental due process. That, however, does not end our inquiry into whether Barbee was prejudiced by trial counsel's ineffective

assistance. In *Boesch*, upon which we rely for the foregoing standard, the petitioner claimed that an erroneous jury instruction rose to the level of fundamental error. 778 N.E.2d at 1279. The "fundamental error" rule is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002). But, we have explained that although the standards for fundamental error and prejudice for ineffective assistance of trial counsel "may frequently lead to the same result, the analyses are different" and present "two substantively different questions." *Benefield,* 945 N.E.2d at 803-05. Thus, we must consider whether counsel's failure to object to final jury instruction 23 prejudiced Barbee—rather than simply deeming the error insufficient to constitute fundamental error.

[15] On appeal, Barbee relies upon *Roberson v. State*, where we found ineffective assistance of trial counsel, for the proposition that the erroneous jury instruction rendered trial counsel's performance deficient and that he suffered resulting prejudice. 982 N.E.2d 452 (Ind. Ct. App. 2013). In *Roberson*, the petitioner argued:

> the murder and voluntary manslaughter instructions were erroneous both because they effectively precluded the jury from considering whether [the petitioner] committed voluntary manslaughter if the State proved the basic elements of murder, i.e. knowingly killing [the victim], and because they erroneously placed the burden on the State of proving the existence of sudden heat beyond a reasonable doubt.

*Id.* at 455-56. We, as did the post-conviction court, find *Roberson* easily distinguishable.

[16] First, the jury in *Roberson* was twice incorrectly informed by the trial court's jury instructions that sudden heat was an element of voluntary manslaughter and that the State bore the burden of *proving* the existence of sudden heat. *Id.* at 459. Here, the jury was correctly informed that sudden heat was a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter and that the State bore the burden of *disproving* its existence. Exhibits at 30. Second, the trial court in *Roberson* instructed the jury, "If the State proves the Defendant guilty of Murder, you *must not* consider the included crimes[,]"982 N.E.2d at 458, rather than the "need not consider" language present here, Exhibits at 30. Although at first glance this appears to make no meaningful difference, the former expressly prohibits the jury from proceeding to consider voluntary manslaughter, having already been incorrectly informed regarding sudden heat and its relation to a murder conviction. Here, because the jury was correctly instructed, we share no such dilemma. And thirdly, in *Roberson*, "neither party explained the proper burden of proof to the jury during their closing arguments." *Roberson,* 982 N.E.2d at 461. Whereas here, as discussed above, trial counsel "correctly and thoroughly explained to the jury," the elements of the crimes and the corresponding burden of proof. Appealed Order at 17.

[17] Moreover, on direct appeal, we concluded that the trial court should not have instructed the jury on voluntary manslaughter because our review of the record

revealed no evidence to support "sudden heat." *Barbee*, No. 49A04-0907-CR-370 at *5. There, Barbee presented the argument that the trial court committed fundamental error by giving the voluntary manslaughter instruction because he was deprived of his "all-or-nothing" trial strategy by the instruction. The State agreed, but argued that the error was harmless. To the extent that Barbee now invites us to revisit that decision and find evidence of sudden heat, we must decline for reasons of res judicata. *See Ben-Yisrayl v. State,* 738 N.E.2d 253, 258 (Ind. 2000) (noting that, as a general rule, when a court decides an issue on direct appeal, the doctrine of res judicata applies, thereby precluding its review in post-conviction proceedings), *cert. denied*, 534 U.S. 1164 (2002).

[18] Considering our decision on direct appeal, the totality of the final jury instructions, and trial counsel's closing argument, we cannot say that Barbee showed a reasonable probability that, but for trial counsel's errors, the result of his trial would have been different. *Garrett,* 992 N.E.2d at 719. "Generally, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Matheny v. State,* 983 N.E.2d 672, 681 (Ind. Ct. App. 2013) (quotation omitted), *trans. denied.* We therefore conclude the post-conviction court did not err in finding trial counsel was not ineffective with respect to the jury instructions.

## 2. *Failure to Call Witness*

[19] Next, Barbee claims his trial counsel was ineffective for failing to call James Williams as a witness at trial. Specifically, Barbee claims that Williams'

testimony would have supported a defense that the shooting was accidental thereby resulting in a conviction for reckless homicide as opposed to murder. In turn, the State argues Barbee has "offered nothing to rebut the presumption that his trial [counsel] made a reasonable strategic decision not to offer Williams as a witness." Brief of Appellee at 17. Again, we agree with the State.

[20] "A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess, although a failure to call a useful witness can constitute deficient performance." *Brown v. State*, 691 N.E.2d 438, 447 (Ind. 1998) (citation omitted). Choosing which witnesses to call "is the epitome of a strategic decision." *Wisehart v. State,* 693 N.E.2d 23, 48 n.26 (Ind. 1998), *cert. denied*, 526 U.S. 1040 (1999). And we will not find counsel ineffective for failure to call a particular witness absent a clear showing of prejudice. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 108 (Ind. 2000), *cert. denied*, 534 U.S. 830 (2001).

[21] When an ineffective assistance of counsel claim alleges the failure to present witnesses, the petitioner must offer evidence as to who the witnesses were and what their testimony would have been. *Lee v. State*, 694 N.E.2d 719, 722 (Ind. 1998*), cert. denied*, 525 U.S. 1023 (1998). At the post-conviction hearing, Barbee presented the testimony of Williams, a childhood friend and sometime employee. Williams testified that he was working for Barbee at the time of the murder in a house which happened to be across the street from Burks' house. He testified:

[Williams]: Well, when I was in the house doing the work, Mr. Barbee was actually in the house with me. He had – he was leaving to go get some materials or something and as he left, I was in there working and heard a bunch of arguing and stuff, so I looked outside and I seen Mr. Barbee arguing with Brandon.

[Counsel]: Do you know Brandon's last name?

[Williams]: Uh, I don't.

[Counsel]: Possibly Brandon Tyler?

[Williams]: Yes.

[Counsel]: Did you see anybody else?

[Williams]: Uh, yes, I did. I'd say it was a porch full of people. I can't name all names because I don't know all of them, but yes.

[Counsel]: Could you describe who else was – I mean, were there both males and females there?

[Williams]: Yes.

[Counsel]: How far away were you from the porch full of people?

[Williams]: Uh, maybe about 15, 20 feet, maybe.

[Counsel]: Were you across the street?

[Williams]: Correct.

[Counsel]: What did you see happen on the porch?

[Williams]: Well, I heard arguing and then I heard the guy, Brandon – I seen the guy Brandon reaching in his pants as to pull out a gun. And when I seen him pull out the gun, I seen Mr. Barbee reach for a gun, and I started to back up away from the window. And as I was backing up away from the window, I heard Mr. Barbee's gun go off as he was trying to pull it out of his pants.

[Counsel]: Did you see Mr. Tyler fire any shots?

[Williams]: No. I seen him grab his gun and then as Mr. Barbee was grabbing his gun, I started to, like I said, fade away. I didn't know if it was gunshots about to be fired or what. I'm not – I mean, I'm just – I'm there working, I'm not about to be ——

[Counsel]: All right. Did you actually – did you actually see anybody hit by any shot or shots?

[Williams]: No.

[Counsel]: What did you do after the shot was fired?

[Williams]: Packed my stuff and left out the house.

[Counsel]: Did you stick around for the police?

[Williams]: No.

[Counsel]:   Did you later go to the police and give any kind of statements?

[Williams]:  No.

[Counsel]:   Did you contact Mr. Barbee's attorneys?

[Williams]:  I contacted Mr. Barbee and he – he, uh, had me talk to one of his attorneys, I don't know who were – who it was, but, yeah.

Post-Conviction Transcript at 30-32.

[22]    Both of Barbee's attorneys at trial, Michael Caudill and Patrick Baker, also testified at the post-conviction relief hearing. Caudill testified that Barbee suggested potential witnesses and that when they had difficulty locating a witness, Barbee would suggest someone else. Although neither Baker nor Caudill initially remembered Williams specifically, Caudill explained, "as we got closer to trial, there was [sic] a couple guys there at the end that we just weren't comfortable calling. And just because of the lateness of the witnesses and that sort of thing." *Id.* at 45. Caudill went on to explain in cross-examination:

[State]:     Mr. Williams testified that he was – he testified in the PCR hearing here that he was subpoenaed and that he waited outside in the hallway, but that – he was told he wouldn't be called as a witness.

[Caudill]:   That would be my --

[State]:     Is that –

[Caudill]:   That would be consistent with my memory.

[State]:     Okay. And do you happen to remember, uh, was it
             just the lateness of you finding him that – that was
             the reason for that, or was there some other reason
             why you felt that it would not be in Mr. Barbee's
             best interest to call that witness, if you remember?

[Caudill]:   My memory of that is that there was – the lateness
             of the witness, didn't want to stir up what we'd
             already had put in place.  And the witness didn't
             seem to be that strong.  And I think those were the
             things that we considered in determining whether or
             not to call him.

[State]:     Okay. And, uhm, would one of your concerns, or
             something that you strategically consider when
             deciding whether to call witnesses, is whether their
             testimony would be consistent or contradictory with
             other witnesses for the defense?

[Caudill]:   Absolutely.

*Id.* at 51-52.

[23]  On review, we believe the decision not to call Williams to testify was a

reasonable trial strategy—and one that we will not second guess.  *Brown*, 691

N.E.2d at 447.  Williams' credibility was problematic at best.  Although we

assume that being a close friend and employee of Barbee would never alone

disqualify a witness in the eyes of trial counsel, here, Williams never reported

the incident to the police and was a last-minute witness, proffered by Barbee himself only after counsel was unable to locate other witnesses. Moreover, because neither Caudill nor Baker remembers what Williams' testimony would have been at the time of trial, and because Williams' never spoke with the police or left a contemporaneous record of his account, the only evidence of what Williams' testimony would have been is that which he offered at the post-conviction relief hearing. *See Shanabarger v. State,* 846 N.E.2d 702, 709 (Ind. Ct. App. 2006) (noting that we assess counsel's performance based on facts that were known at the time and not through the benefit of hindsight), *trans. denied.* Thus, in light of the totality of the defense trial counsel did offer, we find this evidence insufficient to overcome the strong presumption in favor of adequate legal assistance.

[24] One such aspect of that defense was the testimony of Anthony Hampton. Hampton, a passerby and an impartial witness who later reported the incident to the police, testified that as he was walking through a nearby park, he observed three men arguing on the back porch of a home. One of the men raised a handgun and "immediately start[ed] messing with it." [Trial] Tr., Vol. II at 391. Then, sometime later, another man raised his handgun and fired it "simultaneously [with raising the handgun]. It just happened quickly." *Id.* at 393. Hampton's testimony was obviously beneficial to Barbee's theory of self-defense. And, even assuming Williams' testimony would have corroborated Hampton's version of events, we find Williams' lateness and credibility issues to be problems which trial counsel could have reasonably sought to avoid.

Here, the post-conviction court determined that Barbee failed to overcome the presumption of effective performance. Our review of the record does not lead us to an opposite conclusion. *See Badelle v. State*, 754 N.E.2d 510, 539 (Ind. Ct. App. 2001) (deciding in relevant part that, when trial counsel's efforts were "more than adequate" to support a chosen defense, counsel's decision not to seek out additional witnesses was a judgment call within the wide range of reasonable assistance), *trans. denied*.

## C. Appellate Counsel

Finally, Barbee alleges that he was denied effective assistance of appellate counsel because counsel failed to argue that final jury instruction 23 was fundamental error on direct appeal. Because of our resolution of Barbee's claims involving trial counsel, however, we easily dispense with this claim and conclude that Barbee has failed to demonstrate prejudice.

In *Benefield*, we explained:

> As with trial counsel, to establish that appellate counsel rendered ineffective assistance, a petitioner must show appellate counsel was deficient in performance and that the deficiency resulted in prejudice. *Ritchie v. State*, 875 N.E.2d 706, 723 (Ind. 2007). However, appellate and trial counsel have different tasks, which result in different kinds of deficient performance and prejudice. Thus, when the alleged error is that appellate counsel failed to raise issues, prejudice is based on "whether the issues appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial." *Id.* at 724. Accordingly, there is no prejudice created by appellate counsel's failure to raise an unpreserved issue that does not result in

fundamental error because the issue would *not* have been clearly more likely to result in reversal or an order for a new trial. Put another way, if an unpreserved error is found not to be fundamental, then appellate counsel cannot be ineffective for failing to raise it.

945 N.E.2d at 802-03.

[28] Above, in the context of Barbee's claim of ineffective assistance of trial counsel for failing to object to final jury instruction 23, we concluded that Barbee failed to establish prejudice. As we held in *Benefield*,

> the bar establishing fundamental error is higher than that for prejudice of ineffective assistance of trial counsel. Therefore, where an appellant has failed to prove ineffective assistance of trial counsel, our holding would exclude a finding of fundamental error.

*Id.* at 805. Accordingly, because Barbee failed to prove ineffective assistance of trial counsel with respect to final jury instruction 23, he has failed to show fundamental error, and in turn, has failed to demonstrate prejudice resulting from appellate counsel's alleged deficient performance in failing to raise the issue.

# Conclusion

[29] Barbee failed to demonstrate both ineffective assistance of trial and appellate counsel. Therefore, we conclude that the post-conviction court did not err when it denied Barbee's petition for post-conviction relief.

[30] Affirmed.

Crone, J., and Bradford, J., concur.