Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 18 2014, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**MARIO JOVEN**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JOHN V. GUTHRIE,          )
                          )
    Appellant-Defendant,  )
                          )
      vs.            )     No. 45A05-1311-PC-551
                          )
STATE OF INDIANA,         )
                          )
    Appellee-Plaintiff.   )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Senior Judge
Cause No. 45G01-1202-PC-1

**July 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

John V. Guthrie appeals the denial of his petition for post-conviction relief (PCR) following his conviction for two counts of child molesting, one as class A felony and the other as a class C felony. Guthrie contends the trial court erred in rejecting his claims of ineffective assistance of trial and appellate counsel.

We affirm.

The facts underlying Guthrie's convictions were set out by this court in an unpublished memorandum decision affirming his convictions on direct appeal. Those facts are as follows:

> Guthrie and his ex-wife Christine had three children: S.G., who was born in 2002, A.G., who was born in 2003, and H.G., who was born in 2004. Guthrie and Christine divorced in 2008, and Christine was awarded primary custody of the children. Guthrie had visitation every other weekend and one night during the week.
>
> On July 4, 2008, the children spent the night at Guthrie's house as part of his parenting time. The following day, Christine gave S.G. a bath, and S.G. then went outside to play. Shortly thereafter, S.G. told her mother, "Daddy had sex with me." Tr. p. 97. At first, Christine did not believe S.G. and admonished her not to say such things about her father. This caused S.G. to cry, and she insisted that she was not lying. Christine called Guthrie that night, but he was drunk and "blew it off." Tr. p. 101. Christine spoke with S.G. to determine why she would say her father had sex with her. S.G. told her mother that Guthrie "got on top of her," and that he "bounced" on her, indicating to her genital area. Tr. p. 100. She also said that Guthrie put his "pee-pee" in her mouth, made her suck on it, and "peed" on her. Tr. pp. 100–01. She described Guthrie's penis as looking like a "hot dog" that had hair "at the top." Tr. p. 102.
>
> The next morning, Christine asked S.G. about the incident again. When S.G. described the incident "everything was still the same," so Christine took S.G. to the police department. Tr. p. 102. There, S.G. was interviewed by Hammond Police Officer Travis Wheatley ("Officer Wheatley"). S.G. told Officer Wheatley that Guthrie "had sex" with her. Tr. p. 149. She explained that Guthrie made her lie down and "bounced on top" of her. Tr. p. 150. She again stated that Guthrie "peed" on her and stated that "[h]e put his pee-pee in my pee-pee and made me suck on his

pee-pee .*"* *Id.* S.G. was taken to the hospital and examined, but there were no signs of physical trauma.

On July 9, 2008, S.G. was interviewed by Lake County Police Sergeant John Gruszka ("Sgt. Gruszka"). At first, the child was uncooperative, but she later agreed to talk to Sgt. Gruszka. During this interview, S.G. again stated that Guthrie "did sex" with her, and that Guthrie pushed his "pee pee" on her "pee pee" and that this hurt. Tr. pp. 315–16. S.G. again described Guthrie's penis, and stated that his "pee" was white. *Id.* at 319.

The underwear and dress S.G. had worn during her visit with Guthrie were later tested at the Indiana State Police lab. No seminal material was found, but amylase was found on one pair of underwear. "Amylase is a digestive enzyme" that "converts starches into sugars" and is found in "saliva and other bodily fluids but [in] especially high concentrations through the digestive tract." Tr. pp. 228–29. A DNA analysis from the underpants showed a mixture of S.G.'s profile with another individual. Although the DNA from the other individual could not be matched with Guthrie, neither could he be excluded as a possible contributor.

Hammond Police Detective Christopher Matanovich ("Detective Matanovich") interviewed Guthrie on July 14, 2008. When asked about "what he knew" about the alleged sexual molestation, Guthrie did not directly deny the allegations but did claim that he had caught his son A.G. and S.G. "touching each other." Tr. p. 198. He denied sleeping with the children and denied that Christine had ever called him about S.G.'s allegations.

The State charged Guthrie with Class A and Class C felony child molestation on July 31, 2008. On January 14, 2010, the State filed a motion to admit S.G.'s videotaped statement under the protected persons statute. The trial court held a hearing on the motion on January 15, 2010, and found S.G. unavailable to testify and further found that the videotaped statement was sufficiently reliable to admit. A jury trial was held [o]n January 19-21, 2010. At the conclusion of the trial, the jury found Guthrie guilty as charged. At a sentencing hearing held on February 26, 2010, the trial court sentenced Guthrie to thirty-five years on the Class A felony conviction and a concurrent term of five years on the Class C felony conviction.

*Guthrie v. State*, No. 45A03-1003-CR-166, slip op. at 1-2 (Nov. 29, 2010).

On direct appeal, Guthrie argued that the trial court abused its discretion in admitting into evidence the video recording of S.G.'s statement pursuant to the Protected

3

Person Statute (PPS), Ind. Code Ann. § 35-37-4-6 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014). Specifically, appellate counsel argued that the trial court abused its discretion in determining that S.G.'s recorded statement was sufficiently reliable to be admissible pursuant to the PPS. *See* I.C. § 35-37-4-6(e). This court affirmed Guthrie's convictions, concluding that the trial court had not abused its discretion in determining that S.G.'s statement was sufficiently reliable to be admissible pursuant to the PPS, and that in any event, the admission of the video recording was harmless because it was merely cumulative of statements made by Christine, Officer Travis Wheatley, Sgt. Gruszka, and S.G.'s psychologist, Dr. Kwang Choi.

Guthrie filed his pro se PCR petition on February 7, 2012. The petition was amended by counsel on August 9 and October 17, 2012. In its final form, the PCR petition asserted ineffective assistance of trial and appellate counsel based on numerous alleged errors. A hearing was held on February 19, 2013, at which Guthrie called both his trial and appellate counsel to testify. At the conclusion of the hearing, the post-conviction court took the matter under advisement. On October 17, 2013, the post-conviction court issued its order denying Guthrie's petition. Guthrie now appeals.

In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134 (Ind. 2013). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* at 1138 (quoting *Fisher v. State,* 810 N.E.2d 674, 679 (Ind. 2004)). In order to prevail, the petitioner must

4

demonstrate that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the post-conviction court's conclusion. *Bethea v. State*, 983 N.E.2d 1134. Although we do not defer to a post-conviction court's legal conclusions, we will reverse its findings and judgment only upon a showing of clear error, i.e., "that which leaves us with a definite and firm conviction that a mistake has been made." *Id*. at 1138 (quoting *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind. 2000), *cert. denied*, 534 U.S. 830 (2001)).

Guthrie argues that the post-conviction court erred in concluding that he was not subjected to ineffective assistance of trial and appellate counsel. A petitioner will prevail on a claim of ineffective assistance of counsel only upon a showing that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the petitioner. *Bethea v. State*, 983 N.E.2d 1134. To satisfy the first element, the petitioner must demonstrate deficient performance, which is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 1138 (quoting *McCary v. State,* 761 N.E.2d 389, 392 (Ind. 2002)). To satisfy the second element, the petitioner must show prejudice, which is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 1139. "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Kubsch v. State*, 934 N.E.2d 1138, 1147 (Ind. 2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). There is a "strong presumption" that counsel rendered adequate service. *Bethea v. State*, 983 N.E.2d at

1139.  "We afford counsel considerable discretion in choosing strategy and tactics, and '[i]solated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.'"  *State v. Hollin*, 970 N.E.2d 147, 151 (Ind. 2012) (quoting *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002)) (alteration in original).  Because a petitioner must prove both elements in order to succeed, the failure to prove either element defeats the claim.  *See Young v. State,* 746 N.E.2d 920 (Ind. 2001) (holding that because the two elements of *Strickland* are separate and independent inquiries, the court may dispose of the claim on the ground of lack of sufficient prejudice if it is easier).

We first address Guthrie's claims regarding his trial counsel.  On appeal, Guthrie argues that his trial counsel was ineffective in the following ways:  (1) Failing to cross-examine S.G. at the protected person hearing; (2) failing to object to prejudicial drumbeat repetition of S.G.'s statements by various witnesses; and (3) failing to object to vouching testimony.  Guthrie also argues that the cumulative effect of these alleged errors resulted in the denial of a fair trial.

With respect to Guthrie's claim that his counsel was ineffective for failing to cross-examine S.G. at the protected person hearing, we note that a "protected person" is defined, in relevant part, as "a child who is less than fourteen (14) years of age[.]"  I.C. § 35-37-4-6(c)(1).  The PPS provides that a statement or videotape that: (1) is made by a person who at the time of trial is a protected person; (2) concerns an act that is a material element of a listed group of offenses (which includes sex crimes) that was allegedly committed against the person; and (3) is not otherwise admissible into evidence, is

6

admissible if certain requirements are met. I.C. § 35-37-4-6(d). Specifically, such statements are admissible if the trial court finds, in a hearing conducted outside the presence of the jury and attended by the protected person, "that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability", provided that the protected person either testifies at trial or is found to be unavailable as a witness for one of three listed reasons.[1] I.C. § 35-37-4-6(e). Additionally, if a protected person is determined to be unavailable to testify at trial, the statement or videotape is admissible only if the protected person was available for cross-examination either at the PPS hearing or at the time the statement or videotape was made. I.C. § 35-37-4-6(f). If a statement or videotape is admitted into evidence pursuant to the PPS, the defendant may introduce into evidence a transcript or videotape of the protected person hearing. I.C. § 35-37-4-6(i).

In this case, defense counsel was aware that S.G. was present at the courthouse during the protected person hearing, but did not call her to the witness stand. At the hearing, the following exchange occurred:

> THE COURT: You took her deposition; is that correct?
> [Defense Counsel]: Yes, sir. It was admittedly, your Honor, a difficult deposition without—
> THE COURT: That was earlier this week?
> [Defense Counsel]: Yes, sir.
> THE COURT: Her mother testified she brought the child with her?
> [Prosecutor]: Yes.

---

[1] In this case, S.G. was determined to be unavailable pursuant to I.C. § 35-37-4-6(e)(2)(B)(i), which allows a trial court to find a protected person unavailable if, "[f]rom the testimony of a psychiatrist, physician, or psychologist, and other evidence, if any, the court finds that the protected person's testifying in the physical presence of the defendant will cause the protected person to suffer serious emotional distress such that the protected person cannot reasonably communicate."

7

THE COURT: So she is in the building.

[Prosecutor]: Yes.

THE COURT: You are aware of that?

[Defense counsel]: I did see her on my way into court today.

*Trial Transcript* at 50. Guthrie asserts that his trial counsel was ineffective for failing to call S.G. as a witness at the protected person hearing and cross-examine her concerning her prior statements.[2]

As an initial matter, we note that in some circumstances, the decision not to cross-examine a protected person may be a sound tactical decision. *See Pierce v. State*, 677 N.E.2d 39, 48 (Ind. 1997) (explaining that the decision not to cross-examine the victim at a protected person hearing is "readily explainable as a tactical judgment that nothing useful could be accomplished with such a small child"). In light of the admitted difficulty defense counsel had in taking S.G.'s deposition, he could have concluded that cross-examining S.G. would be of no use. Moreover, if trial counsel believed based on S.G.'s deposition testimony that her testimony at the protected person hearing would have been largely consistent with her previous statements, counsel could reasonably have concluded that calling her to testify would undermine his argument that her previous statements were not sufficiently reliable to be admissible pursuant to the PPS. In this case, however, defense counsel testified at the PCR hearing that the decision not to cross-examine S.G. was not strategic; instead, he stated that he believed he would have another

---

[2] Guthrie also argues that his appellate counsel was ineffective for failing to argue that Guthrie was denied the opportunity to cross-examine S.G. at the protected person hearing. In his reply brief, Guthrie clarifies that he "argues either appellate counsel should have challenged the admission of the hearsay statements because S.G. was unavailable; or, alternatively, trial counsel was ineffective for failing to call her." *Reply Brief* at 6.

8

opportunity to cross-examine her. Specifically, he stated "they didn't give me an opportunity to cross-examine her, like I didn't think that was going to be my only chance to cross-examine her, and that's why I didn't call her at that other hearing when I saw her in the building." *PCR Transcript* at 22. Defense counsel's misunderstanding of the PPS cannot serve as the basis for a reasonable strategic decision.

Nevertheless, we cannot conclude that Guthrie has established prejudice resulting from trial counsel's failure to cross-examine S.G. In support of his argument, Guthrie cites *Poffenberger v. State*, 580 N.E.2d 995 (Ind. Ct. App. 1991), *trans. denied*. In that case, counsel was found ineffective for failing to cross-examine the complaining witness at the protected person hearing. Under the version of the PPS in effect at that time, the protected person was required to testify at the hearing as opposed to merely being available for cross-examination. This court held that "[b]ecause the child did not testify at the hearing as required by [the PPS], we find that Poffenberger was effectively denied his right to cross-examine the child." *Id.* at 999. The court went on to conclude, with very little analysis, that counsel's failure constituted deficient performance and that the defendant was prejudiced because "[i]f his counsel had cross-examined [the child], it might have raised serious questions of credibility or other grounds for objecting to the admission of the statement." *Id.*

To the extent the *Poffenberger* court presumed prejudice based solely on trial counsel's failure to cross-examine a child victim, we disagree with its rationale. In this case, Guthrie has not directed our attention to any evidence suggesting that the trial court would have ruled differently regarding the admission of S.G.'s out-of-court statements

9

had S.G. been cross-examined by defense counsel or that viewing a recording of such cross-examination would have affected the jury's verdict. Moreover, *Poffenberger* is distinguishable because in this case, evidence was presented at the post-conviction hearing affirmatively indicating that Guthrie was not prejudiced by trial counsel's failure to cross-examine S.G. Specifically, the post-conviction court reviewed S.G.'s deposition testimony, taken just days before the protected person hearing, and found that "S.G.'s deposition reveals nothing that would call into question the court's determination that S.G.'s statements were reliable under the [PPS]." *Appellant's PCR Appendix* at 123-24. Because Guthrie has not included a copy of S.G.'s deposition in the appellate record, we take the post-conviction court's finding in this regard at face value.[3] Thus, it appears that if S.G. had been cross-examined, her testimony would have been largely consistent with the statements admitted into evidence at Guthrie's trial. Essentially, Guthrie asks this court to presume that he was prejudiced based solely on counsel's allegedly deficient performance. We note, however, that it is the post-conviction petitioner's burden to establish prejudice, which Guthrie simply has not done. Accordingly, his claim of ineffective assistance of trial counsel premised on counsel's failure to cross-examine S.G. at the protected person hearing fails.

---

[3] Guthrie asserts that S.G.'s deposition is "irrelevant" to the issue of prejudice "because the jury never heard the deposition." *Appellant's Brief* at 11. We disagree. When a PCR petitioner raises a claim of ineffective assistance of counsel, it is for the post-conviction court to consider the issue of prejudice. The deposition testimony, which was taken just days prior to the protected person hearing, apparently indicated to the post-conviction court that S.G.'s testimony at the hearing would have been consistent with her previous statements and unhelpful to the defense.

10

Next, Guthrie argues that trial counsel was ineffective for failing to object to prejudicial drumbeat repetition of S.G.'s statements through the testimony of several witnesses and the subsequent admission of a video recording of an interview with S.G. *See Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991) (reversing due to prejudicial "drumbeat repetition of the victim's original story prior to calling the victim to testify" based on testimony of three adult witnesses recounting the victim's original story before the victim testified). "[T]o prevail on a claim of ineffective assistance due to the failure to object, the defendant must show an objection would have been sustained if made." *Benefield v. State*, 945 N.E.2d 791, 799 (Ind. Ct. App. 2011) (quoting *Overstreet v. State*, 877 N.E.2d 144, 155 (Ind. 2007), *cert. denied*, 555 U.S. 972 (2008)) (alteration in original). Moreover, we note that the choice of defense theory is a matter of trial strategy, and we will not second-guess the propriety of counsel's tactics in this regard. *Benefield v. State*, 945 N.E.2d 791. In other words, trial strategy is not subject to attack through an ineffective assistance of counsel claim unless the strategy is so deficient or unreasonable that it falls outside of the objective standard of reasonableness. *Id.* "This is so even when such choices may be subject to criticism or the choice ultimately prove[s] detrimental to the defendant." *Id.* at 799 (quoting *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998)) (alteration in original).

At the post-conviction hearing, Guthrie elicited the following testimony from his trial counsel:

Q: Do you recall the order of the witnesses that the state presented?
A: No.
Q: Do you recall their testimony generally?

11

A: Some of it.

Q: When they testified, each one basically came in and testified about [S.G.'s]—about what [S.G.] told them; is that correct? Do you recall that?

A: They called all those people, yeah, like her mom and the detective and then the cop and then the therapist and the doctor.[4]

Q: Okay. And did you find any problems with them coming in one after another testifying to the same thing that [S.G.] had told them, even when she wasn't available to testify?

A: That's a problem, yeah.

Q: Are you familiar with Modesitt versus State or Morris versus State regarding drumbeat repetition?

A: Somewhat. I can't say that's something that—that's an objection that I raise on occasion.

Q: When there's—when there's so little evidence in this case, is there any reason not to make that objection?

A: That's clearly what they were trying to do is just have a bunch of people come in and vouch for her, yeah.

*PCR Transcript* at 29-30. On redirect, the following exchange occurred:

Q: At the [PPS] hearing Judge Vasquez ruled that there was admissible hearsay, but isn't vouching and drumbeat repetition of witnesses, prejudicial remarks, isn't that a lot different than just admissible hearsay?

A: I think it would be, yeah.

Q: And would there be any reason not to object to that vouching or drumbeat repetition?

A: No.

*Id.* at 40.

Based on this testimony, Guthrie argues that trial counsel's failure to object to the allegedly prejudicial drumbeat repetition of S.G.'s accusations was not a strategic decision. We note, however, that the post-conviction hearing took place approximately three years after Guthrie's trial, and trial counsel had difficulty recalling many of the

---

[4] We note that trial counsel's statement in this regard overstates the number of witnesses who testified concerning S.G.'s statements to them. The witnesses who recounted S.G.'s statements were Christine, Sgt. Gruszka, Officer Wheatley, and Dr. Choi. Additionally, a video recording of S.G.'s statement to Sgt. Gruszka was played for the jury.

details of the trial. We have reviewed the transcript of Guthrie's trial, and trial counsel's strategy is apparent on the face of the record. Trial counsel's theory of defense was that Christine, S.G.'s mother, had fabricated the allegations and coached S.G. in order to prevent Guthrie from getting custody of the children or exercising parenting time. In support of this theory, trial counsel argued that S.G. gave several inconsistent statements. In his opening statement, trial counsel pointed out these inconsistencies, stating that:

> So at different times she says he put his pee-pee in my pee-pee, put his pee-pee on my pee-pee. She says different things. She said at different times, you know, he wiped it off with a sock or with paper. She tells all kinds of different stories and say well, it happened a bunch of different times. Her story's not consistent because she's making it up.

*Trial Transcript* at 89. Trial counsel again referred to inconsistent statements in closing arguments, stating that "when the prosecutor talks about consistency, she hasn't been consistent. She's trying to tell a story that her mom told her and her mom told her what to say . . . ." *Id.* at 371. Trial counsel also reiterated in his closing arguments that S.G.'s statements were inconsistent with respect to whether she had been penetrated. Thus, it is clear that part of trial counsel's strategy was to point out inconsistencies among S.G.'s statements to various witnesses, and the admission of additional statements supported that strategy. Indeed, Guthrie's trial counsel admitted into evidence additional accounts of S.G.'s allegations in the form of Officer Wheatley's offense report, which contained a narrative of both Christine's account of S.G.'s statements to her as well as S.G.'s statements to Officer Wheatley. Based on trial counsel's cross-examination of Officer Wheatley, it is clear that trial counsel admitted the report for the purpose of highlighting inconsistencies between S.G.'s various statements. For all of these reasons, it is apparent

13

that counsel had a strategic reason not to object to the admission of those statements. Moreover, as we explain below in addressing Guthrie's claims of ineffective assistance of trial counsel, S.G. was available for cross-examination at the protected person hearing. Accordingly, at least *some* of her out-of-court statements were admissible at trial through the PPS.[5] Accordingly, we cannot conclude that a tactical decision not to object to the admission of the remaining statements for the purpose of pointing out inconsistencies was unreasonable.

Moreover, even assuming that counsel's failure to object was not a tactical decision, we cannot conclude that Guthrie has established prejudice resulting from any alleged drumbeat repetition. Indeed, as we explained above, the admission of the statements of each witness could have been helpful to the defense. Admitting the statements allowed trial counsel to point out inconsistencies among the statements, thereby undermining S.G.'s credibility and supporting the defense theory that Christine had fabricated the allegations and coached S.G. Moreover, at least some of the statements were admissible, and Guthrie does not specify which statements trial counsel should have objected to, nor does he explain at what point the repetition became unduly prejudicial. We note further that while Christine and Sgt. Gruszka gave somewhat detailed accounts of S.G.'s statements to them, Officer Wheatley and Dr. Choi gave

---

[5] In his reply brief, Guthrie concedes that at least some of S.G.'s statements were admissible through the PPS. *See Reply Brief* at 8 (admitting that "some of the hearsay evidence was properly admitted through the PPS[,]" but objecting to the "piling on of witnesses"). In light of Guthrie's argument that appellate counsel was ineffective for failing to argue that that S.G. was not available at the protected person hearing, this concession seems imprudent. This is so because if S.G. was not available for cross-examination at the protected person hearing, none of her statements would have been admissible under that statute. In any event, as we will explain below, S.G. was, in fact, available for cross-examination at the protected person hearing, and as a result, her statements were admissible pursuant to the PPS.

14

relatively brief descriptions of S.G.'s statements. We also note that Sgt. Gruszka's testimony was merely a summary of his interview of S.G., and the jury viewed a video recording of the interview immediately after he recounted her statements. Under the facts and circumstances of this case, we cannot say that the incremental effect of each additional statement was sufficient to establish prejudice for the purposes of a claim of ineffective assistance of trial counsel. In sum, trial counsel's failure to object to the alleged drumbeat repetition of S.G.'s allegations did not constitute ineffective assistance.

Guthrie's next claim of ineffective assistance of trial counsel centers on counsel's failure to object to alleged vouching testimony. In *Lawrence v. State*, 464 N.E.2d 923 (Ind. 1984), *abrogated on other grounds by Lannan v. State*, 600 N.E.2d 1334 (Ind. 1992) and *overruled by Hoglund v. State*, 962 N.E.2d 1230 (Ind. 2012), our Supreme Court addressed whether the testimony of a clinical social worker invaded the province of the jury and amounted to improper accreditation. In holding that the social worker's testimony was permissible, the court recognized "that there is a special problem in assessing the credibility of children who are called upon as witnesses to describe sexual conduct." *Id.* at 925. The court reasoned as follows:

> Whenever an alleged child victim takes the witness stand in such cases, the child's capacity to accurately describe a meeting with an adult which may involve touching, sexual stimulation, displays of affection and the like, is automatically in issue, whether or not there is an effort by the opponent of such witness to impeach on the basis of a lack of such capacity. The presence of that issue justifies the court in permitting some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters. Such opinions will facilitate an original credibility assessment of the child by the trier of fact, so long as

15

they do not take the direct form of "I believe the child's story", or "In my opinion the child is telling the truth".

*Id.*

More than twenty-five years after *Lawrence* was decided, our Supreme Court reversed course in *Hoglund v. State*, 962 N.E.2d 1230. In *Hoglund*, the court noted that *Lawrence* was decided ten years before the adoption of the Indiana Rules of Evidence, including Ind. Evidence Rule 704(b), which provides in relevant part that "[w]itnesses may not testify to opinions concerning . . . whether a witness has testified truthfully[.]" The court ultimately overruled *Lawrence*, noting that the indirect vouching permitted by its holding "is little different than testimony that the child witness is telling the truth[,]" and consequently "at odds with Evidence Rule 704(b)." *Hoglund v. State*, 962 N.E.2d at 1237.

Guthrie was convicted two years before our Supreme Court decided *Hoglund*. Thus, *Lawrence*'s more relaxed standard for the admissibility of vouching testimony is applicable to Guthrie's ineffective assistance of counsel claim. *See Smylie v. State*, 823 N.E.2d 679, 690 (Ind. 2005) (noting that "[a]n attorney is not required to anticipate changes in the law and object accordingly in order to be considered effective" (internal quotation omitted), *cert. denied*, 546 U.S. 976 (2005).

Guthrie argues that Sgt. Gruszka improperly vouched for S.G.'s credibility. In support of his argument, Guthrie notes that Sgt. Gruszka testified that he had interviewed over one hundred children the same age as S.G. When asked whether S.G.'s statements appeared to be "scripted or planted", Sgt. Gruszka responded, "No. I strongly felt those

were not scripted events." *Trial Transcript* at 321. In support of his argument that Sgt. Gruszka's testimony in this regard amounted to improper vouching, Guthrie cites *Kindred v. State*, 973 N.E.2d 1245, 1258 (Ind. Ct. App. 2012), *trans denied*, in which this court held that "where a witness opines as to whether the child victim was coached— offering an ultimate opinion, as [the witness] did here—the witness invades the province of the jury and vouches for the child." In reaching this conclusion, however, the court relied on *Hoglund* for the proposition "that testimony about whether a child has been coached amounts to the same improper commentary on the child's truthfulness as testimony about whether a child is prone to exaggerate or fantasize about sexual matters." *Id.* We agree that Sgt. Gruszka's testimony would be improper under *Hoglund*, but as we explained above, *Hoglund* was decided well after Guthrie's conviction. The law controlling at the time of Guthrie's trial was set forth in *Lawrence*.

We find that Sgt. Gruszka's allegedly improper vouching testimony is substantially similar to the accrediting testimony our Supreme Court found acceptable in *Lawrence*. In *Lawrence*, a clinical social worker testified as follows:

> Q. Have you come into any conclusions concerning her perception of reality?
> A. I believe (the alleged victim) has a strong ability to know what happens to her.
>
> ———————
>
> Q. Did you receive any indication or is it your opinion that it is possible that she fabricated the story concerning her sexual trauma, out of some sort of need?
>
> ———————
>
> A. None. The only thing I noted was a great anxiety on (her) part to be very sure she was telling the truth very precisely. She had anxiety about preciseness.

464 N.E.2d at 924-25 (alterations in original). Our Supreme Court ruled that the testimony was permissible because it did not take the direct form of stating an opinion on whether the child was telling the truth. We believe Sgt. Gruska's testimony that S.G.'s statements did not appear to him to be scripted is akin to the social worker's testimony that in her opinion, there were no indications that the child had fabricated her story. In other words, Sgt. Gruszka did not state a direct opinion on whether S.G. was telling the truth; instead, he testified concerning his impressions of whether S.G.'s statement appeared to be "scripted or planted." *Trial Transcript* at 321. We therefore conclude that any objection to Sgt. Gruszka's testimony on the basis of improper vouching would have been overruled. Accordingly, Guthrie has not established deficient performance based on counsel's failure to object.

Guthrie also argues that his trial counsel was ineffective for failing to object to Christine's allegedly vouching testimony. Specifically, Guthrie directs our attention to the following testimony:

> . . . She said that he peed on her. And I said well, what did he do after that. She said he wiped it off and I said well, with a towel or, you know, napkin? She said, "No, with a sock". *And that's when I knew that she was telling the truth* because me being married to him, he would just grab some kind of garment off the floor . . . .

*Trial Transcript* at 100 (emphasis supplied). We agree that the highlighted testimony constituted improper vouching even under *Lawrence*'s more relaxed standards. We note, however, that Guthrie's trial counsel testified at the PCR hearing that he had a strategic

18

reason not to object to Christine's testimony in this regard. Guthrie's trial counsel testified as follows:

> Q: Directing your attention to the testimony of Christine Guthrie, when she said "I knew that [S.G.] was telling the truth," and that's at the trial record on page 100, would you consider that vouching?
> A: Definitely.
> Q: And would there be a reason not to object to that?
> A: I do remember part of my theory of the defense was that this was all a mom trying to win custody of her kids by blaming the dad during a divorce, so I should have objected to that, but my theory was that this was something that she orchestrated from the very beginning. *So her vouching for her daughter's credibility and acting like she thought it was the truth I thought was something that she would have done the whole time because she's the one who put her up to it.*

*PCR Transcript* at 27 (emphasis supplied). This testimony, though somewhat equivocal, indicates that counsel believed that allowing Christine's vouching testimony supported his theory of defense. Guthrie has made no argument on appeal that such a strategy is unreasonable.

In any event, we agree with the trial court's conclusion that Guthrie has not established prejudice based on Christine's vouching testimony. Guthrie cites only a single, fleeting statement made in the midst of Christine's relatively lengthy and detailed testimony. Guthrie has not established a reasonable probability that the outcome of the trial would have been different had the statement been excluded.

Guthrie's final claim of trial counsel ineffectiveness is that the cumulative effect of trial counsel's errors amounted to ineffective assistance entitling him to a new trial. But as we have explained above, Guthrie has not demonstrated that his trial counsel was ineffective. "Alleged '[t]rial irregularities which standing alone do not amount to error

19

do not gain the stature of reversible error when taken together.'" *Kubsch v. State*, 934 N.E.2d at 1154 (quoting *Reaves v. State*, 586 N.E.2d 847, 858 (Ind. 1992)) (alteration in original).

We now turn to Guthrie's claims that his appellate counsel was ineffective for failing to raise certain issues on appeal. "The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel in that the defendant must show appellate counsel was deficient in her performance and that the deficiency resulted in prejudice." *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). Our Supreme Court has recognized three types of ineffective assistance of appellate counsel: (1) Denial of access to appeal; (2) failure to raise issues that should have been raised; and (3) failure to present issues well. *Wrinkles v. State*, 749 N.E.2d 1179 (Ind. 2001), *cert. denied*, 535 U.S. 1019 (2002). Guthrie's claims fall into the second category. We use a two-part test to evaluate such claims: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Timberlake v. State*, 753 N.E.2d at 606 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

> [T]he reviewing court should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made.

*Id.* at 605 (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998)) (alteration in original).

Guthrie first argues that his appellate counsel was ineffective for failing to raise the issue of whether S.G. was available for cross-examination at the protected person hearing.[6] Guthrie asserts that S.G. was not available for cross-examination at the hearing and, as a result, the admission of her statements violated the PPS, the Sixth Amendment to the United States Constitution,[7] and article 1, section 13 of the Indiana Constitution. None of these provisions require the declarant of an out-of-court statement be cross-examined by defense counsel. Rather, they provide that the declarant of certain out-of-court statements be *available* for cross-examination. *See* I.C. § 35-37-4-6(f) (providing that if a protected person is unavailable to testify at trial, a statement or videotape is admissible only if the person "was *available* for cross examination" either when the statement was made or at the protected person hearing" (emphasis supplied)); *Howard v. State*, 853 N.E.2d 461, 470 (Ind. 2006) (noting that the Sixth Amendment requires only that the defendant be given the opportunity to confront and cross-examine a witness, and that "[w]hether, how, and to what extent the opportunity for cross-examination is used is within the control of the defendant"); *Hutcherson v. State*, 966 N.E.2d 766, 771 (Ind. Ct. App. 2012) (explaining that although article 1, section 13 of the Indiana Constitution

---

[6] Both Guthrie and the State inaccurately characterize this claim as falling into the third category of ineffective assistance of trial counsel, i.e., failure to present an issue well. But as this court noted in its memorandum decision on Guthrie's direct appeal, appellate counsel simply did not raise the issue of S.G.'s availability.

[7] We note that Guthrie makes no argument that S.G.'s statements to Christine were testimonial and therefore barred by the Sixth Amendment in the absence of an opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36 (2004) (holding that the Sixth Amendment prohibits the introduction of testimonial out-of-court statements unless the witness is unavailable and the defendant had a prior opportunity for cross-examination); *Purvis v. State*, 829 N.E.2d 572 (Ind. Ct. App. 2005) (explaining that *Crawford* does not govern the admissibility of nontestimonial out-of-court statements), *trans. denied*, *cert. denied*, 547 U.S. 1026 (2006).

requires that the defendant "have an opportunity to cross-examine the witness during the face to face confrontation, the opportunity does not have to be seized or successful and the right can be waived" (quoting *Williams v. State*, 698 N.E.2d 848, 852 (Ind. Ct. App. 1998), *trans. denied*), *trans. denied*.

As we explained above, S.G. was present at the courthouse during the protected person hearing, but she was not in the courtroom and she was not called to testify. After Christine, Sgt. Gruszka, Officer Wheatley, and Dr. Choi testified at the hearing, Guthrie's trial counsel argued that S.G.'s statements were inadmissible, but not on the basis of S.G.'s unavailability at the protected person hearing. Instead, trial counsel stated "I don't believe that the testimony has been consistent and I want to directly confront and cross-examine her are [sic] in front of the jury, your Honor. And I'm asking that the state's motion be denied." *Trial Transcript* at 49. Before issuing its ruling, the trial court clarified that trial counsel was aware that Christine had brought S.G. with her and that S.G. was in the building. Trial counsel confirmed that he had seen S.G. in the hallway, but he did not call S.G. to testify, nor did he argue that S.G. was not available to cross-examination. At the conclusion of the hearing, the trial court ruled that S.G.'s statements were admissible through the PPS.

At trial, Guthrie did not object to the admission of S.G.'s statements through the testimonies of Christine, Officer Wheatley, Dr. Choi, or Sgt. Gruszka. When the State moved to admit S.G.'s videotaped statement into evidence, however, trial counsel objected on the following bases:

22

> The objections are the same objections I made during the protected persons hearing. And I just want to make that clear. You know, one of the things that I think is the proper foundation hasn't been laid, I don't think that the information—information provided fits within the statute. I don't think that one of the things the statute also required is that—that protected person may also have to be present at the hearing. You know, she was in the hallway. She never stepped foot in the courtroom. I'm making my objection based on the circumstances don't—protected person—she was in the hallway but she wasn't in the courtroom and called as a witness.

*Trial Transcript* at 324. The court overruled the objection, noting that trial counsel had been aware that S.G. was available for cross-examination at the protected person hearing.

At the PCR hearing, when asked why she did not raise the issue of S.G.'s availability on appeal, Guthrie's appellate counsel responded as follows:

> I considered the issue, but it seemed to me that, just from reading the transcript, that she was available, that the court pointed out the fact that she was in the hallway and it seemed to me that she was available, and if I raised it and said she wasn't, I was just—the court of appeals was just going to turn around and say, "Listen, that's not what the transcript says".

*PCR Transcript* at 52-53.

At the outset, we note that any claim that S.G. was not available for cross-examination at the PPS hearing was waived for failure to make a timely objection. As noted above, trial counsel did not object on that basis at the protected person hearing. Instead, he argued that S.G.'s statements had not been consistent—in other words, that they were not reliable for the purposes of the PPS. *See Lyons v. State*, 976 N.E.2d 137, 141 (Ind. Ct. App. 2012) (noting that a party "cannot object on one ground at trial and then raise a different claim of error on appeal"). Although trial counsel stated at the protected person hearing that he wished to cross-examine S.G. at trial, this did not amount to an objection based on S.G.'s unavailability at the protected person hearing,

23

particularly in light of the fact that the trial court specifically inquired as to whether Guthrie was aware that S.G. was present in the building. When the State moved to admit S.G.'s recorded statement at trial, Guthrie finally objected on the basis of S.G.'s purported unavailability at the protected person hearing. But by the time of trial, the time for making any objection on the basis of S.G.'s unavailability at the protected person hearing had passed. *See Purifoy v. State*, 821 N.E.2d 409, 412 (Ind. Ct. App. 2005) (noting that the contemporaneous objection rule "requires parties to voice objections in time so that harmful error may be avoided or corrected and a fair and proper verdict will be secured"), *trans. denied*.

Because any claim that S.G. was not available for cross-examination was waived, appellate counsel would have been required to argue the issue as a claim of fundamental error. The fundamental error exception to the contemporaneous objection rule is extremely narrow and applies only in the most egregious circumstances—that is, where the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Brown v. State*, 929 N.E.2d 204 (Ind. 2010). "The error claimed must either 'make a fair trial impossible' or constitute 'clearly blatant violations of basic and elementary principles of due process.'" *Id.* at 207 (quoting *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009)). "[A]t bottom, the fundamental-error doctrine asks whether the error was so egregious and abhorrent to fundamental due process that the trial judge should or should not have acted, irrespective of the parties' failure to object or otherwise preserve the error for appeal." *Whiting v. State*, 969 N.E.2d 24, 34 (Ind. 2012). Our Supreme Court has

24

noted that "[w]here the procedural posture of a claim is affected by counsel's failure to object at trial, an ineffective assistance of counsel claim may be more on point than a claim of fundamental error." *Ryan v. State*, 9 N.E.3d 663, 668 n.4 (Ind. 2014).

On the record before us, we cannot say that a strategic decision to forego raising the issue of S.G.'s availability on direct appeal with an eye toward raising the issue in a PCR petition through a claim of ineffective assistance of trial counsel would be unreasonable. Moreover, we agree with appellate counsel's conclusion that S.G. was, in fact, available for cross-examination at the PPS hearing. Guthrie argues that S.G. was not available for cross-examination because, although she was in the building, she never set foot inside the courtroom. We do not believe that protected person must be present in the courtroom in order to be considered available for cross-examination. This court addressed a similar claim in *Surber v. State*, 884 N.E.2d 856, 864 (Ind. Ct. App. 2008), *trans. denied*, and reasoned that "we cannot see how requiring [the five-year-old victim] to attend the entire hearing and allowing [her] to hear the testimony of the other witnesses concerning her prior statements would advance the goals of the [PPS]." We reach the same conclusion here. Guthrie has cited no authority for the proposition that a victim must be present in the courtroom and observe the proceedings in order to be considered available for cross-examination for the purposes of the PPS, the Sixth Amendment, or article 1, section 13.

Guthrie also argues that in order for S.G. to be available for cross-examination by the defense, the *State* was required to call her as a witness—the implication being that if the defense called S.G. to testify, she would be subject to *direct* examination by the

defense as opposed to cross-examination. We find this argument unpersuasive. The principal purpose of cross-examination "to challenge whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed." *Ohio v. Roberts*, 448 U.S. 56, 71 (1980) (internal quotation omitted). The purpose of the protected person hearing "is to give the defendant the right, under less traumatic circumstances than a trial, to inquire into the statement or ask the child questions about it." *Miller v. State*, 517 N.E.2d 64 (Ind. 1987), *superseded in part by statute.* These purposes could have been satisfied if Guthrie had called S.G. to testify at the protected person hearing, as he was clearly given the opportunity to do. Guthrie's focus on the technical, procedural definition of the term "cross-examination" is misplaced. *Cf. Poffenberger v. State*, 580 N.E.2d at 999 (noting that where child was present at protected person hearing, but did not testify, defendant "was provided the opportunity to cross-examine the child at the hearing," but nevertheless finding error because the version of the PPS in effect at the time required the child to actually testify at the hearing, not merely be available). In sum, we cannot say that the issue of S.G.'s availability for cross-examination at the protected person hearing was significant, obvious, or clearly stronger than the issues raised on direct appeal. Moreover, because such a claim would not have been successful on appeal, Guthrie was not prejudiced by appellate counsel's failure to raise it.

Finally, Guthrie argues that his appellate counsel was ineffective for failing to raise the issues of drumbeat repetition and vouching on direct appeal. At the PCR

26

hearing, appellate counsel testified that she did not raise the issues because they had not been preserved for appeal, and would therefore have to be challenged under the fundamental error standard. In weighing potential issues, appellate counsel decided not to pursue the fundamental-error claims and instead raised the properly preserved issue of whether S.G.'s statements were sufficiently reliable to be admissible under the PPS. As we explained above, the decision to reserve procedurally defaulted issues for post-conviction relief may be a sound tactical judgment. On the record before us, we cannot conclude that appellate counsel's strategic decision in this regard was unreasonable. Moreover, for the same reasons that we conclude Guthrie was not prejudiced by his trial counsel's failure to object to drumbeat repetition and vouching, we also conclude that appellate claims of fundamental error premised on those issues were unlikely to succeed on appeal. *Whiting v. State*, 969 N.E.2d at 34 (noting that although claims of fundamental error and claims of ineffective assistance of counsel are different, they often yield the same result). Accordingly, Guthrie has not established that prejudice arising from appellate counsel's failure to raise those issues. For all of these reasons, we conclude that Guthrie's appellate counsel was not ineffective. Accordingly, Guthrie has not established that the post-conviction court erred in denying his PCR petition.

Judgment affirmed.

MATHIAS, J., and PYLE, J., concur.